UNITED STATES of America

v.

William J. JEFFERSON, Defendant.

Case No. 1:07cr209.

United States District Court,
E.D. Virginia,
Alexandria Division.

July 8, 2008.

Amy Berman Jackson, Robert Powel Trout, Gloria B. Solomon, Trout Cacheris PLLC, Washington, DC, for Defendant.

Mark Lytle, Rebeca H. Bellows, United States Attorney's Office, Alexandria, VA, Charles E. Duross, U.S. Department of Justice, Washington, DC, for Plaintiff.

## ORDER

T.S. ELLIS, III, District Judge.

A sixteen-count indictment (the "Indictment") charges defendant William J. Jefferson, a sitting member of the United States House of Representatives, with a variety of crimes including bribery, conspiracy, wire fraud, foreign corrupt practices, money laundering, obstruction of justice, and racketeering. At issue is defendant's motion to dismiss Counts 5-10 of the Indictment, which charge defendant with depriving citizens and the House of Representatives of his honest services by wire fraud. Defendant seeks dismissal of these Counts on the ground that, whether the offense is predicated on bribery or conflict of interest, the Indictment fails to allege the requisite elements of an honest services wire fraud offense as required by Rule 7, Fed.R.Crim.P. Alternatively, defendant argues that the honest services fraud statute, 18 U.S.C. § 1346 (1988), is unconstitutional both on its face and as applied to the facts of this case. For the reasons that follow, defendant's motion must be denied.

## I.

Defendant is the currently sitting member of the United States House of Representatives representing Louisiana's 2nd Congressional District, an office he has held since 1991. The Indictment alleges that beginning in or about January 2001, defendant used his office to advance the business interests of various individuals and corporations in return for money and other things of value paid either directly to defendant or via 'nominee companies,' *i.e.,* companies ostensibly controlled by one of defendant's family members, but in fact controlled by defendant himself. The specific schemes alleged in the Indictment are described in greater detail in an earlier Memorandum Opinion. *See United States v. Jefferson,* 534 F.Supp.2d 645 (E.D.Va. 2008). These schemes involved defendant allegedly soliciting things of value in return for using his office to advance the business interests of various individuals and corporations including Vernon Jackson, iGate, Inc., Lori Mody, IBBS, and W2-IBBS by, *inter alia,* (i) meeting with American government officials (including officials at the Export-Import Bank of the United States (Ex-Im Bank)[1] and the United States Trade Development Agency (USTDA)[2]), (ii) meeting with foreign government officials, (iii) traveling to Nigeria, Ghana, and elsewhere in Africa, and (iv) using his congressional staff.

Counts 5-10 allege that, in furtherance of one or more of these schemes, defendant engaged in five separate wire communications. The specific nature of the five alleged wire communications is not material to the analysis called for by defendant's motion; it is sufficient to note that each of

---

**1.** The Export-Import Bank of the United States is an agency established by Congress "to assist in financing the export of U.S. goods and services to international markets." *About Ex-Im,* http://www.exim.gov/about/mission.cfm (last visited July 8, 2008).

**2.** The USTDA, located in Arlington, Virginia, is an agency established by Congress to "advance[ ] economic development and U.S. commercial interests in developing and middle income countries." *About USTDA: Mission Statement,* http://www.ustda.gov/about/mission.asp (last visited June 24, 2008.)

the wire communications is alleged to have been conducted in furtherance of a scheme to defraud and deprive American citizens of their right to defendant's honest services by taking bribes from Vernon Jackson and Jackson's company iGate, Inc., and from Lori Mody and Mody's companies IBBS and W2–IBBS, in return for defendant's performance of various official acts. The official acts alleged in the Indictment are discussed at greater length in a previous Memorandum Opinion. *See United States v. Jefferson,* 562 F.Supp.2d 687 (E.D.Va.2008).

Defendant now moves for dismissal of Counts 5–10 on two grounds. First, defendant argues that the Indictment fails to allege the elements of an honest services fraud offense as required by Rule 7, Fed. R.Crim.P. Second, and in the alternative, defendant argues that the honest services fraud statute, 18 U.S.C. § 1346, is unconstitutional both on its face and as applied in this case. The matter has been fully briefed, and because the parties have waived oral argument, it is now ripe for disposition.

## II.

### A.

■ An indictment is legally sufficient if (i) it contains the elements of the offense charged and informs the defendant of the charges he must meet, and (ii) it identifies the offense conduct with sufficient specificity to allow the defendant to plead double jeopardy should there be a later prosecution based on the same facts. *Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). In this case, Counts 5–10 of the Indictment charge defendant with violating the wire fraud statute, 18 U.S.C. § 1343 (2002)[3], which provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be [guilty of an offense].

From the time it was enacted in 1952, § 1343—and its companion statute prohibiting mail fraud, 18 U.S.C. § 1341—had been widely interpreted to apply to both (i) schemes to defraud persons of tangible property and (ii) schemes to defraud persons of intangible rights, such as the right to a defendant's honest services.[4] But in *McNally v. United States,* 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), the Supreme Court limited these statutes to schemes designed to defraud persons of tangible property rights, saying that "[i]f

---

**3.** Section 1343 was amended in January 2008, but the amendment is not relevant to the matter at hand.

**4.** *See United States v. Mandel,* 591 F.2d 1347, 1361–62 (4th Cir.1979); *see generally McNally v. United States,* 483 U.S. 350, 363 n. 1, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987) (Stevens, J., dissenting) (collecting cases applying the mail fraud statute, 18 U.S.C. § 1341, in prosecutions of public officials for fraudulent deprivation of honest services).

It is important to note that the mail fraud and wire fraud statutes are virtually identical in pertinent part, and the Supreme Court has analyzed them together with regard to honest services fraud. *See Carpenter v. United States,* 484 U.S. 19, 25 & n. 6, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987) ("The mail and wire fraud statutes share the same language in relevant part, and accordingly we apply the same analysis to both sets of offenses here.").

Congress desires to go further, it must speak more clearly than it has." *Id.* at 360, 107 S.Ct. 2875.

In response, Congress enacted 18 U.S.C. § 1346, which reads, in its entirety:

For the purposes of this chapter, the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services.

Although the statute did not define "the intangible right of honest services," the Fourth Circuit has held that the passage of § 1346 so soon after *McNally* "strongly suggests ... that Congress was content with the pre-*McNally* interpretations" of the mail and wire fraud statutes. *United States v. Bryan,* 58 F.3d 933, 940 n. 1 (4th Cir.1995), abrogated on other grounds, *United States v. O'Hagan,* 521 U.S. 642, 117 S.Ct. 2199, 138 L.Ed.2d 724 (1997). Accordingly, it is appropriate to look to both pre- and post-*McNally* cases to determine the appropriate scope of the wire fraud statute where, as here, a defendant is charged with a scheme to deprive others of his honest services.

■ The Fourth Circuit has clearly held that a public official who solicits or receives bribes deprives the public of his or her honest services, and that a scheme to solicit or receive bribes may give rise to liability under the honest services fraud statute. *United States v. Mandel,* 591 F.2d 1347, 1362 (4th Cir.1979), rev'd en banc on other grounds, *United States v. Mandel,* 602 F.2d 653 (4th Cir.1979). In *Mandel,* the Fourth Circuit explained:

When a public official has been bribed, he breaches his duty of honest, faithful and disinterested service. While outwardly purporting to be exercising independent judgment in passing on official matters, the official has been paid for his decisions, perhaps without even considering the merits of the matter. Thus,

the public is not receiving what it expects and is entitled to, the public official's honest and faithful service.

*Id.* It follows that an indictment will sufficiently charge a violation of the honest services wire fraud statute where it alleges that a defendant devised a scheme to solicit or receive bribes and transmitted a wire communication in furtherance of that scheme.

■ In this case, Counts 5–10 allege that this defendant devised a scheme to deprive others of defendant's honest services "by knowingly and corruptly demanding, seeking, receiving, accepting, and agreeing to receive and accept things of value"—in other words, by soliciting or receiving bribes. Counts 5–10 each also allege a specific wire communication transmitted or caused to be transmitted by defendant in furtherance of that scheme. Accordingly, Counts 5–10 sufficiently allege a violation of the honest services wire fraud statute.

Defendant contends that Counts 5–10 are nonetheless deficient because the acts defendant is alleged to have performed in return for bribes are not "official acts" of the sort that would give rise to liability under the bribery statute, 18 U.S.C. § 201 (1994). A previous Memorandum Opinion squarely addressed and rejected this argument. *See United States v. Jefferson,* 562 F.Supp.2d 687 (E.D.Va.2008). For the reasons stated in that Memorandum Opinion, the Indictment does allege official acts necessary to support a violation of the bribery statute, and accordingly the allegations regarding wire communications transmitted in furtherance of a scheme to deprive citizens of honest services by bribery adequately state an honest services

wire fraud offense under §§ 1343 and 1346.

## B.

██ A violation of the honest services fraud statute may be predicated on offenses other than bribery. In *United States v. Mandel*, the Fourth Circuit stated that a public official may commit honest services fraud

> where [he] fails to disclose the existence of a direct interest in a matter that he is passing on. Provided the requisite intent is shown, the official's failure to disclose the existence of a direct interest in a matter that he is passing on defrauds the public and pertinent public bodies of their intangible right to honest, loyal, faithful and disinterested government.

591 F.2d at 1363. It follows that an indictment will sufficiently charge a violation of the honest services wire fraud statute where it alleges that the defendant intentionally failed to disclose the existence of a direct interest in a matter on which he is "passing."

Here, the Indictment alleges that defendant devised a scheme to enrich himself and members of his family by soliciting bribes in return for the performance of various official acts. The Indictment further alleges that defendant failed to disclose the existence of his interest when performing the official acts for which he had solicited and received bribes. Specifically, the Indictment alleges that defendant failed to disclose the fact that he had solicited and received bribes from Vernon Jackson, iGate, Inc., Lori Mody, IBBS, and W2–IBBS when performing official acts including (i) official travel to Nigeria and Ghana, (ii) correspondence and meetings with foreign government officials, (iii) correspondence and meetings with American government officials, and (iv) use of congressional staff, all to advance iGate's, IBBS's, and W2–IBBS's business ventures in Africa.

██ Defendant contends that Counts 5–10 fail to allege a violation of the honest services fraud statute predicated on a conflict of interest, arguing that the Counts are deficient in two ways. First, defendant argues that the Indictment simply does not allege honest services fraud by means of an undisclosed conflict of interest. As defendant notes, the honest services fraud allegations contained in Counts 5–10, and referenced in Counts 1, 2, and 16, explicitly frame the alleged deprivation of honest services as a consequence of defendant's alleged solicitation and receipt of bribes. Thus, defendant argues that the Indictment alleges honest services fraud predicated only on bribery, not on conflict of interest. This argument fails, because Counts 5–10 do clearly allege the basic elements of an honest services wire fraud offense—namely that defendant (i) devised a scheme to defraud citizens of his honest services and (ii) transmitted a wire communication in furtherance of that scheme—and, as noted, the Indictment does contain factual allegations of conflicts of interest in defendant's performance of official acts. Moreover, as defendant has recognized, an indictment need not "enumerate every possible legal and factual theory of [a defendant's] guilt." *United States v. American Waste Fibers, Co., Inc.*, 809 F.2d 1044, 1047 (4th Cir.1987). Counts 5–10 adequately allege the statutory elements of an honest services fraud offense, and the government is entitled to pursue a theory of the offense at trial that is predicated on alleged conflicts of interest in defendant's performance of official duties.

██ Next, defendant argues that the indictment is deficient because it does not allege any conflict of interest related to a matter on which defendant was "passing." See *Mandel*, 591 F.2d at 1363 (honest services fraud occurs "where a public official

fails to disclose the existence of a direct interest in a matter that he is passing on."). Defendant suggests that the Fourth Circuit's use of the term "passing on" in *Mandel* effectively limits honest services fraud predicated on a conflict of interest to conflicts regarding a matter over which an official has ultimate decision-making authority.[5] Defendant's suggested approach places undue emphasis on the two words "passing on" at the expense of the rest of the Fourth Circuit's opinion in *Mandel*, which emphasizes that the honest services fraud law is meant to vindicate the public's "intangible right to honest, loyal, faithful and disinterested government." *Mandel*, 591 F.2d at 1347. Given this purpose, and the fact that a public official has, by virtue of his position, the ability to influence many governmental decisions outside of his direct decision-making power, *Mandel* is more accurately read to recognize honest services fraud predicated on a conflict of interest with regard to an official's *official acts*, including those affecting decisions that may be beyond the official's own decision-making authority.[6]

In summary, Counts 5–10 sufficiently allege a violation of the wire fraud statute, 18 U.S.C. § 1343, and defendant's chal-lenges to these Counts fail because (1) the Indictment sufficiently alleges official acts giving rise to a bribery charge, as explained in a previous Memorandum Opinion, *United States v. Jefferson*, 562 F.Supp.2d 687 (E.D.Va.2008); and (2) the Indictment need not enumerate every possible legal and factual theory of defendant's guilt so long as the Indictment, as here, recites the elements of the statutory offense. Accordingly, defendant's motion to dismiss Counts 5–10 of the Indictment must be denied.

### III.

In addition to challenging the Indictment, defendant challenges the constitutionality of the honest services fraud statute, 18 U.S.C. § 1346, both on its face and as applied to the facts alleged in the Indictment. Defendant's facial challenge is precluded by the Supreme Court's clear statement that "vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand." *United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975); *see also United States v. Sun*, 278 F.3d 302, 309 (4th Cir.2002) (same).[7] Accordingly, it is necessary to address only defendant's as applied challenge.

---

5. *See United States v. Sawyer*, 85 F.3d 713, 724 (1st Cir.1996) ("When an official fails to disclose a personal interest in a matter over which she has decision-making power, the public is deprived of its right either to disinterested decision making itself or, as the case may be, to full disclosure as to the official's potential motivation behind an official act.").

6. *See United States v. Jefferson*, 562 F.Supp.2d 687 (E.D.Va.2008) (official acts are those performed by an official in his or her official capacity that (i) involve the performance of an official duty or settled customary duty or practice and (ii) involve or affect a government decision or action, whether or not the official has authority to make the ultimate decision or take the ultimate action himself).

7. Defendant suggests that a majority of the opinions in the Supreme Court's fractured decision in *City of Chicago v. Morales*, 527 U.S. 41, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999), allow facial challenges for vagueness in other contexts. The Fourth Circuit's decision in *Sun*, which post-dates *Morales*, reaffirms the *Mazurie* rule and demonstrates that the Court of Appeals has not read *Morales* in the manner defendant suggests.

Defendant argues that he could not have been aware that his alleged actions might violate § 1346 because the allegations in the Indictment do not describe the sort of conduct that gives rise to honest services fraud. Specifically, defendant argues that the actions alleged in the Indictment do not constitute either bribery or a conflict of interest. As noted in Part II, *supra*, a previous Memorandum Opinion held that the Indictment does sufficiently allege official acts giving rise to a bribery offense. *See United States v. Jefferson*, 562 F.Supp.2d 687 (E.D.Va.2008). Moreover, for the reasons given in Part II, the Indictment also sufficiently alleges a conflict of interest of the sort that may give rise to liability under the honest services fraud statute. Accordingly, the Indictment adequately describes the sort of conduct that gives rise to honest services fraud, and defendant's challenge to the constitutionality of the honest services fraud statute as applied to the facts of the Indictment must be denied.

Accordingly, for the reasons stated herein, and for good cause,[8]

It is **ORDERED** that defendant's motion to dismiss wire fraud counts (Counts 5–10) is **DENIED**.

The Clerk is directed to send a copy of this Order to all counsel of record.

---

8. Defendant advances no argument that the wire communications alleged in Counts 5–10 are privileged by the Speech or Debate Clause, U.S. Const. art. I, § 6, cl. 1.